# Hake *against* Fink.

In an action of debt upon a recognizance in the orphans' court, to a husband and wife, in right of the wife, instituted by the wife alone after a divorce, the record of that divorce, if set out in the plaintiff's declaration, may be given in evidence: and however erroneous, it could not be reversed in a collateral proceeding.

In such an action, it is not necessary to set out the divorce: it may be shown in evidence, when material, without being pleaded.

Whether testimony shall be given to the jury after the evidence had been closed on both sides, is within the discretion of the court below; and the decision in regard to it, is not a subject of error.

Where there is no proof before the jury to raise the question propounded to the court, an error in the answer to it would be immaterial.

A loan to a husband by the father of his wife, during the coverture, could not affect her right to recover her interest in her father's estate after she was divorced.

A decree of the orphans' court in a proceeding in partition, that he to whom the real estate was confirmed, should secure to be paid to a husband in right of his wife, her share of the valuation-money, followed by a recognizance to the commonwealth, conditional for the payment of the shares of the heirs generally,

[Hake v. Fink.]

does not so vest the right in the husband as to defeat the recovery of it by the wife after a divorce.

ERROR to the common pleas of *York* county.

The commonwealth for the use of Anna Maria Fink against Jacob Hake. This was an action of debt upon a recognizance in the orphans' court.

On the petition of Jacob Hake, the eldest son, proceedings in partition were instituted in the orphans' court, on the real estate of Andrew Hake, deceased, and it was divided into three parts. No. 1 was appraised at 5764 dollars, and on the 6th of November 1832, " came into court Jacob Hake, eldest son of said Andrew Hake, deceased, and prayed to be permitted to take, at the valuation aforesaid, the said tract of land described as No. 1, with the appurtenances."

Whereupon the court decreed the same to him, he paying the other heirs, their respective shares of the valuation thereof, according to the following distribution and decree of this court. " And it is further ordered and decreed by the court, that he, the said Jacob Hake, be allowed the sum of 56 dollars and 33 cents, the costs and expenses of these proceedings, that he retain in his own hands the sum of 634 dollars and 18 cents, in full of his share and dividend of said tract of land, No. 1. That he the said Jacob Hake, well and truly pay, or cause to be paid, unto Treak Hake, Andrew Hake, John Hake, Henry Grove intermarried with Catherine, a daughter of said intestate; Christian Hake, intermarried with Elizabeth: Joseph Kraft intermarried with Sarah, a daughter of said intestate; *Sebastian Fink, intermarried with Anna Maria,* also a daughter of said intestate, the sum of 634 dollars and 18 cents, each, on the 1st day of April, A. D. 1834, with legal interest for the same, to be computed from the 1st day of April 1833, &c.; the said several sums of money, being the full and entire amount of the valuation aforesaid. And lastly, it is ordered and decreed by the court, that he the said Jacob Hake, upon his making the several payments aforesaid, or giving good and sufficient security for the same, that thereupon, he the said Jacob Hake, his heirs and assigns, do hold, and enjoy the said tract of land No. 1," &c.

" Jacob Hake and Henry Hoff, respectively bound unto the commonwealth of Pennsylvania, in the sum of 11,528 dollars, current, lawful money of Pennsylvania, to be levied of their goods and chattels, lands and tenements, respectively, upon this condition, that the said Jacob Hake shall and do well and truly pay unto the other heirs, of the said Andrew Hake, deceased, their respective shares, dividends and purparts of, in and to that part of the real estate of the said Andrew Hake, deceased, the intestate, marked No. 1, which the said Jacob Hake has taken at the valuation, agreeably to and in manner, days and times set forth, and appointed for payment thereof, in and by the foregoing distribution and decree, then

IX.—2 D*

these recognizances to be void, otherwise to be and remain in full force and virtue."

The plaintiff having set it out in his declaration, offered in evidence the record of the divorce of Anna Maria Fink from her husband, before this suit was brought. To which the defendant objected; and the court overruled the objection and sealed a bill of exceptions.

Here the testimony closed, and the court adjourned until the next morning. When the court met, the defendant offered in evidence a record of the orphans' court, exhibiting the report of an auditor to whom the subject had been referred, making distribution of the estate of Andrew Hake, deceased, by which it appeared, that the plaintiff, Anna Maria Fink, had been fully advanced by her father in his life time. This evidence the plaintiff objected to as offered out of time. The court below, being of opinion, that if the evidence was received, it would defeat the plaintiff's right to recover, and do her great injustice, availed themselves of their discretion, and rejected the evidence: to which the defendant excepted.

The court was requested to charge the jury on the part of the defendant: 1. that if the jury believe there was collusion between Anna Maria Fink and Sebastian Fink, in procuring their divorce, the divorce is of no validity, and their verdict in this case must be for the defendant.

To which the court (Durkee, President) answered:—" If the divorce was obtained through collusion of the parties, for the purpose of defrauding the estate of Andrew Hake, deceased, it can have no effect in this case. If Fink was indebted to the estate, and in order to prevent a deduction from being made on that account, from the share coming to him in right of his wife, the divorce was collusively obtained, the plaintiff cannot recover, unless her share in the estate be greater than the debt due by her husband, and then only the excess."

2. If the jury believe, that Sebastian and Anna Maria Fink, received from her father more money than an heir's share of his estate amounts to, and the same is not repaid, said Anna Maria can receive no more out of said estate, and the verdict in this suit must be for defendants.

Answer:—" If Anna Maria Fink received money from her father by way of *advancement,* or if she received money from him by way of *loan,* (provided she were of age, and discovert at the time of such loan) the sum must be taken into consideration by the jury, and deducted from her share; and if her husband, Sebastian Fink, received money from her father, by way of *advancement,* such money must also be deducted from her share, and if the moneys so received, amount to as much as a child's share, the said Anna Maria can recover no more, and the verdict must be for defendant; but any money received by Fink from his wife's father as a *loan,* and which he was bound to *repay,* cannot be deducted from her share, provided, she be lawfully divorced."

[Hake v. Fink.]

3. That on the recognizance of Jacob Hake, given in evidence, no suit will lie, except for the use of the recognizee, Sebastian Fink, and therefore the plaintiff cannot recover in this case.

This, the court answered in the negative.

4. That the decree of the money sued for in this case, to Sebastian Fink, on the 6th of November 1832, vested such title to the same in him, that the divorce of Anna Maria Fink, from said Sebastian, subsequently obtained, did not divest his right to the money.

This, the court answered in the negative.

Errors assigned.

1. The court erred in admitting in evidence, the record of the divorce.

2. In rejecting the orphans' court record of the distribution of the estate of Andrew Hake.

3. And in their answers to defendant's 1st, 2d, 3d and 4th points.

*Evans* and *Mayer*, for plaintiff in error.
*Hambly*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—The record of divorce was not necessarily a part of the plaintiff's title, and it might have been irrelevant when it was offered, had it not been set forth in the declaration which is inconveniently prolix. An action on a recognizance, like an action on a bond, is founded on the penalty which is *prima facie* a title to the money, subject however to the defeasance stated in the condition; and it was unnecessary, therefore, to set out either the divorce or the proceedings in partition. Had the dissolution of the marriage become a material fact in the progress of the trial, it might have been shown by evidence without being pleaded; but as the divorce was laid as a part of the plaintiff's case, it was necessary perhaps to prove it: certain it was not so irrelevant as to make the reception of the proof erroneous. Of the validity of the sentence, there can not be a doubt. The court had jurisdiction of the subject matter, and its decision, however erroneous, could not be reversed in a collateral proceeding. The confession of the libel in this instance was pregnant with evidence of collusion; and to withhold its sanction from what may, at bottom, be a voluntary separation, no court ought to decree a divorce on less than proof by witnesses of the facts charged; still, where it has done otherwise, its sentence, though liable to be vacated, is not void; and we cannot say that the record was, in this evidence, improperly admitted.

To admit the auditor's adjustment of the advancements or to exclude its being offered after the evidence was closed, was within the discretion of the court; and the decision, in regard to it, is not a subject of error.

Nor are the exceptions to the direction given on the points pro-

[Hake v. Fink.]

pounded founded in point of law. The sentence of divorce, though not void in the first instance, might be avoided by proof of collusion. If, therefore, it was, as alleged, procured by covin to prevent the husband's debts to the intestate from being taken out of his wife's portion, it was necessary only to discover the trick to defeat it. This is all that was delivered to the jury as direction, and it is all that the defendant required the court to give. The second instruction was also proper. Had the wife, or her husband during the coverture, received money from the intestate as an advancement, or had she, being of age, received it when she was sole, it would have been proper to deduct it; but no loan to the husband, during the coverture or not, could affect her chose in action after she was divorced from him; and this direction, also, was a substantive compliance with the defendant's prayer. Besides, there was no proof before the jury to raise the question, and an error in regard to it would have been immaterial. As to the rest, it cannot be pretended that the decree of partition fixed the right to the money irrevocably in the husband, or that an action cannot be maintained on the recognizance for the use of any one else. The name of the commonwealth is used in it as a common trustee, not for the use of any one *nominatim*, but for the use of the intestate's heirs, and consequently for those who should be entitled at the time of actual payment; it is therefore immaterial that the decree vested the title on terms of paying or securing the purchase-money, among others, to the husband by name. Being thus enabled to call for the security, he might doubtless have taken it to himself, and such a step would have been equivalent to payment to him, or reduction to his possession. But the direction in the decree to give security to the husband was not a judgment for the money which operated upon the right, but a condition precedent to the vesting of the title in the child who had elected to take at the valuation. Having full power over the money, therefore, and choosing to leave it outstanding on a recognizance acknowledged to the heirs generally, or those who had owned the land, he allowed her part of the security to be made her chose in action. The money never was his, for he never assumed the ownership of it. He might have sued for it, or released it, but he did not; it was a thing in action, and he suffered it to remain so. This disposition of the wife's title over which he had dominion as the representative of her person, would be good even against his creditors; for he was not bound to reduce her choses to possession for their benefit. As indicative of his will, the form of the recognizance is every thing, and the condition prescribed in the decree nothing. He might elect to leave the ultimate ownership to the contingency of survivorship; and, by acquiescing in a security to his wife by the designation of an heir, he did so. The court, therefore, could not, with propriety, have directed that the decree of partition vested the purchase-money in him, and that no suit could be brought on the recognizance but to his use. If

[Hake v. Fink.]

the divorce was valid, the wife was entitled to sue for her portion disburthened of his debt to the intestate.

Judgment affirmed.